## Bogard v. Hindman, et al.

(Decided October 19, 1911.)

### Appeal from Calloway Circuit Court.

Deeds—Where a Grantee Returned Deed to Himself and Had Deed Executed to Daughter—Estoppel.—Where a grantee returned a deed executed to him and had another executed to his daughter which she had recorded, such a transaction was in fraud of his creditors, but binding by estoppel so far as he was concerned and his children occupied no better position than he did. In view of this the petition of another child upon his death to sell the land for a division of the proceeds was properly dismissed.

ACREE, SPEIGHT & DEAN for appellant.

E. P. PHILLIPS for appellees.

OPINION OF THE COURT BY JUDGE NUNN—Affirming.

In 1871 D. B. Hindman purchased thirty acres of land from J. H. Utterback for $300, and gave his two notes for $150 each which he afterwards paid. Utterback made Hindman a deed to the land at the time of the sale, but some time the next year Hindman carried the deed back to Utterback and told him that his creditors were bothering him; that he wanted to try to fix it so they would not get the land, and asked him to make another deed to the land to his daughter, Joan Hindman. Utterback made a second deed as requested and delivered it to Hindman who had it recorded soon afterwards. It appears that the first deed was never recorded, and Utterback does not know what became of it, as it was not delivered to him. Hindman, his wife and daughter, Joan, lived upon the land from the date of the purchase until the death of the father and mother in 1902. In January, 1910, Joan Hindman sold and conveyed the land to D. B. Bogard, who immediately placed improvements upon it.

In November, 1910, Mary Bogard brought this action against John H. Hindman and Joan Hindman (who after the death of her parents married Scott) and others. She alleged that her father died the owner of the thirty acres of land; that he left as his only children and heirs herself, John Hindman, Joan E. Scott and D. B. Bogard, a grandchild and only child of a deceased daughter, and asked that the land be sold and the proceeds divided among the heirs. D. B. Bogard answered alleging that he was the owner of the land by purchase from his aunt, the legal title holder; that he believed at the time he purchased; that she was the owner; that he had made improvements upon the land to the amount of $200, and asked that he be protected in his purchase. Joan Scott answered denying the allegations of the petition, and alleged that she was the owner of the land by deed of record; that she had been the owner since 1872; that she agreed with her father at that date to reside with him and her mother and care for them until their deaths for the land; that she did reside with them as she agreed to; that they both died at the age of about eighty-three; that in the last few years of their lives they were very feeble and needed her care and attention; that she paid their doctor bills and burial expenses; that she knew nothing of the deed from Utterback to her

father; that if her father ever had such a deed he destroyed it and caused the deed to be made to her.

The lower court dismissed the petition, and appellant contends that the ruling should be reversed because Utterback conveyed the land to her father by the first deed and, therefore, had nothing to convey at the time he made the deed to Joan Hindman and she obtained nothing by reason thereof.

The testimony shows that the deed to the father had never been recorded and that he still held it. He had the power to abandon his claim to the land, to destroy the deed made to him and direct one made to another. This was in fraud of his creditors, and they, within the proper time, could have defeated the purpose of Hindman, but it was binding by estoppel in so far as he was concerned, and, of course, the children occupy no better position than he did—they took only such rights upon his death as he had. This is so well settled, it is not necessary to cite authorities. In addition to this, the testimony shows that Joan alone resided with her mother and father from the time of the purchase of the land until their deaths; that they were in a feeble condition and needed a great deal of attention which she gave them and that her services were worth more than the land. The testimony also shows that D. B. Bogard was an innocent purchaser, and the lower court was right in not disturbing him, therefore, the decree is affirmed.